**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION**

| | | |
|---|---|---|
| FRANCISCO ORTEGA GARCIA, *et al.,* | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Civil Action No. 1:17-cv-00028 |
| | § | |
| UNITED STATES OF AMERICA, *et al.,* | § | |
| Defendants. | § | |

## ORDER ADOPTING THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Before the Court is the "Magistrate Judge's Report and Recommendation" ("R&R") (Docket No. 221) in the above-captioned case. This case arises from the death of Patricia Guadalupe Garcia Cervantes ("Cervantes"). *See* Docket No. 22. Francisco Ortega Garcia ("Plaintiff") filed this suit in several capacities: individually, as Cervantes's surviving spouse, successor to Cervantes's estate, and as next friend of V.S.O.G., Cervantes's minor child (collectively "Plaintiffs"). The R&R recommended the Court dismiss all of Plaintiffs' claims.[1] *See* Docket No. 221. Plaintiffs timely objected to the R&R. *See* Docket No. 228. The United States of America ("Government"); Mercury Marine, a division of Brunswick Corporation ("Mercury Marine"); and Safe Boats International LLC ("Safe Boats") (collectively "Defendants") timely responded to Plaintiffs' objections. *See* Docket Nos. 231, 237, and 238.

## I. BRIEF FACTUAL BACKGROUND[2]

On the evening of April 23, 2015, Cervantes and Galindo Ruiz-Hernandez[3] ("Ruiz-Hernandez") tried to swim across the Brownsville Ship Channel ("Channel"), to enter the United States from Mexico. That night, the United States Coast Guard ("USCG") embarked on a "United States Coast Guard Law Enforcement Vessel" ("Vessel") manufactured by Safe Boats and powered by three engines manufactured by Mercury Marine.

The evening's weather conditions allowed for six-mile visibility. Thus, after scanning the water ahead of the Vessel and finding no ships or objects in the water, the USCG accelerated the

---

[1] The recommended dismissal includes Plaintiffs' claims for product liability, negligence, and wrongful death.

[2] Unless noted otherwise, the Court obtained the facts from the R&R (Docket No. 221).

[3] Ruiz-Hernandez was convicted of conspiracy to transport an alien resulting in death and transporting an alien for private financial gain and resulting in death. *See United States v. Ruiz-Hernandez,* 890 F.3d 202 (5th Cir. 2019).

Vessel to "come up to plane".[4] The Vessel then struck Cervantes as she tried to cross the Channel.[5] Cervantes died following the impact.

## II.    LEGAL STANDARD[6]

A federal court acts as a federal "common law court" when exercising admiralty jurisdiction. *See Exxon Shipping Co. v. Baker*, 554 U.S. 471, 507 (2008). "In formulating federal maritime law, the federal courts may examine, among other sources, judicial opinions, legislation, treatises, and scholarly writings." *Air and Liquid Systems Corp. v. DeVries*, 139 S. Ct. 986, 992 (2019).

## III.    DISCUSSION

### A. Plaintiffs' Negligence-Based Claims

#### i.    Claims Against the Government

A maritime negligence claim requires: (1) the defendant owed a duty to the plaintiff, (2) the defendant breached the duty, (3) the plaintiff sustained damages, and (4) the defendant's wrongful conduct caused the plaintiff's damages. *Withhart v. Otto Candies, LLC*, 431 F.3d 840, 842 (5th Cir. 2005). Courts determine the threshold element of duty predominately by the "foreseeability of the harm suffered by the complaining party." *Consol. Aluminum Corp. v. C.F. Bean Corp.*, 833 F.2d 65, 67 (5th Cir. 1987). A harm is foreseeable if "harm of a general sort to persons of a general class might have been anticipated by a reasonably thoughtful person, as a probable result" of a defendant's conduct. *Id.* at 68.

Plaintiffs failed to identify what duty the Government owed Cervantes—an undocumented alien ("UDA") swimming in the Channel at night trying to avoid detection. Although aware of the possibility that a UDA might use the Channel as a crossing point, before Cervantes, no USCG member interviewed by Plaintiffs had ever encountered a UDA swimming across the Channel at night. *See* Docket No. 112 Ex. 2 at 14. The Government did not owe Cervantes a duty unless the USCG had actual knowledge about the probability of hitting Cervantes as she swam across the Channel. *See Republic of France v. United States*, 290 F.2d 395, 401 (5th Cir. 1961).

---

[4] "Planing" allows a vessel to achieve better maneuverability and performance by bringing a vessel near or on top of the water. *See* Docket No. 117.

[5] Cervantes was trying to cross undetected and did not have any noisemaking or illuminating equipment that would alert the USCG of her presence in the Channel.

[6] Plaintiffs elected to proceed under the Court's admiralty jurisdiction. *See* Docket No. 228 at 1.

Again, Ruiz-Hernandez was the smuggler trying to transport Cervantes across the Channel. Plaintiffs incorrectly rely on language in his case before the Fifth Circuit which states that "it was reasonably foreseeable that a person swimming across a high-traffic ship channel in the dark of night would be struck by a passing ship" to allege that the Government owed a duty to Cervantes. *United States v. Ruiz-Hernandez*, 890 F.3d 202, 211 (5th Cir. 2019); *see also* Docket No. 237 at 4. However, *Ruiz-Hernandez* did not contemplate foreseeability from the perspective of a boat navigating through a "high-traffic ship channel in the dark of night." *See id.* The Fifth Circuit's decision and above stated language was limited in scope to the foreseeability issue from the perspective of a human smuggler directing UDAs to swim across the "high traffic" Channel. *See id.* Thus, *Ruiz-Hernandez* does not apply here.

For these reasons, Plaintiffs failed to establish the Government owed Cervantes a duty and failed to allege prima facie claim of negligence. Thus, Plaintiffs' negligence-based claims against the Government warrant dismissal.

ii.    Claims against Safe Boats and Mercury Marine

Plaintiffs claim both Safe Boats and Mercury Marine "had a duty to provide the [Government] with post-sale warnings and instructions and failed to do so." Docket No. 84 at 12, 15. A manufacturer's duty to warn arises "when the manufacturer 'knows or has reason to know' that its product 'is or is likely to be dangerous for the use for which it is supplied' and the manufacturer 'has no reason to believe' that the product's users will realize that danger." *DeVries*, 139 S. Ct. at 993 (quoting 2 Restatement (Second) of Torts § 388, p. 301 (1963-1964)). So, any possible duty to warn is owed to the *product's user*. *See id.* (emphasis added). Thus, if there were a breach of some duty to warn, it is the Government—not Plaintiffs—that would have a claim against Safe Boats, Mercury Marine, or both. Thus, Plaintiffs' negligent failure to warn claims against Safe Boats and Mercury Marine warrant dismissal.

B.  Plaintiffs' Products Liability Claims Against Safe Boats and Mercury Marine

The Supreme Court and the Fifth Circuit apply Section 402A of the Restatement (Second) of Torts to maritime product liability cases, which requires the alleged harm came to the product's ultimate user or consumer. *See Saratoga Fishing v. J.M. Martinac & Co.*, 520 U.S. 875, 879 (1997); *see also Vickers v. Chiles Drilling Co.*, 822 F.2d 535, 538 (5th Cir. 1987). Cervantes was neither a user nor a consumer of the Vessel manufactured by Safe Boats or the Vessel's three engines manufactured by Mercury Marine. *See* Restatement (Second) of Torts § 402A(1) cmt. l

(Am. Law Inst. 1965). Instead, Cervantes's incidental contact with these products made her a "casual bystander" who lacks standing to bring a maritime product liability claim. *See id.* cmt. o ("Casual bystanders, and others who may come in contact with the product, as in the case of ... a passer-by injured by an exploding bottle, or a pedestrian hit by an automobile, have been denied recovery."). Thus, Plaintiffs' maritime product liability claims against Safe Boats and Mercury Marine warrant dismissal for lack of standing.[7]

### C. Plaintiffs' Wrongful Death Claims

Recovery is available for wrongful death when tortious conduct caused the death of another person or legal entity. *See, e.g.*, Restatement (Second) of Torts § 925, cmt. a (Am. Law Inst. 1965) ("a cause of action against the one who *tortiously* caused the death") (emphasis added). State statutes govern wrongful death actions where the decedent was a non-seafarer and the death occurred on navigable waters. *See Yamaha Motor Corp., U.S.A. v. Calhoun*, 516 U.S. 199, 215 (1996). Thus, Plaintiffs must establish Cervantes would have had a right to sue Defendants for injuries deriving from the incident had she lived. *See Tex. Civ. Prac. & Rem.* § 71.003. As a result of the Court's dismissal of the "underlying [tort] claims, Plaintiff failed" to adequately allege a wrongful death claim against Defendants. *Green v. Toyota Motor Corp.*, No. 3:11-cv-0207-N, 2012 WL 13103033, at *4 (N.D. Tex. July 18, 2012). Thus, Plaintiffs' wrongful death claims against all Defendants warrant dismissal.

## IV. CONCLUSION

After a *de novo* review of the record, the Court **ADOPTS** the R&R (Docket No. 221) in its entirety. The Court therefore overrules Plaintiffs' objections and **DISMISSES** Plaintiffs' (1) negligence-based claims; (2) product liability claims; and (3) wrongful death claims **with prejudice**. All pending motions are **DENIED as moot.** The Court **ORDERS** the Clerk of the Court to close this case.

Signed on this 15th day of August, 2019.

Rolando Olvera
United States District Judge

---

[7] Because of Plaintiffs' lack of standing, the Court will not address the R&R's analysis of the discretionary function exception to a waiver of sovereign immunity.